IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SYLVIA RAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 19-0069-KD-MU |
| | ) | |
| ESTATE OF BRADLEY ELLIOTT GRAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF MOUNDVILLE'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, the City of Moundville, and requests this honorable Court to enter a judgment in its favor as a matter of law, averring as follows:

**STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff Sylvia Ray is the Administrator of the Estates of Paige Mitchell and Kaci Mitchell. [Doc. 25, ¶'s 1, 2].

2. Paige Mitchell, Ms. Ray's daughter, had previously dated Bradley "Brad" Elliot Gray "off-and-on." [Doc. 50-1, p. 18-19].

3. A criminal complaint was filed against Brad based on his actions towards Paige Mitchell on July 9, 2015 that allegedly violated Ala. Code § 13A-6-132, Domestic Violence – Harassment. [Doc. 25, ¶ 9; Doc. 50-3, ECF p. 3].

4. Police department records indicate that Brad had threatened Ms. Mitchell while keeping a pistol on his person, but in its holster. [Doc. 50-3, ECF p. 3].

5. Those records also indicate that Ms. Mitchell stated Brad then "snapped out of it," "went back into the house and laid the pistol down." [*Id.*].

6. Thereafter, officers from the Moundville police department arrested Brad Gray and "recovered and confiscated" the pistol. [Doc. 50-3, ECF p. 3].

7. Brad Gray pled guilty to the charge of Domestic Violence - Harassment on September 8, 2015. [Doc. 50-3, ECF p. 14].

8. After receiving his guilty plea, the Hale County District Court ordered that Brad Gray attend anger management classes. [Doc. 50-3, p. ECF p. 17-19].

9. He completed those classes on March 17, 2016. [*See Id.*].

10. Approximately a year and a half after the harassment incident, on January 25, 2017, Paige Mitchell went to the house of a friend, Michelle Kramer, who was having problems with her boyfriend, Ricky Dalton. [Doc. 50-1, p. 54].

11. Brad Gray was there, but Ms. Mitchell did not know he was going to be there. [Doc. 50-1, p. 53].

12. Sometime later that night or early the next morning, Brad Gray went to Paige Mitchell's home and shot Ms. Mitchell and her daughter, Kaci Mitchell, killing both. [Doc. 25, ¶ 3].

13. When police went to the home of Brad Gray, after learning of the murder of Paige and Kaci Mitchell, Brad shot himself in the head while the police were still on the front porch. [Doc. 50-1, p. 101].

14. Defendant Ken Robertson served as the Chief of Police for the City of Moundville from 2006 to 2016. [Doc. 50-2, p. 22-23].

15. Chief Robertson had returned Brad Gray's pistol to him in August of 2015. [Doc. 50-2, p. 47].

16. Robertson testified that he was in a store in Moundville a few days after having returned from a conference at the beach, and Brad Gray was there being loud and boisterous. [Doc. 50-2, p. 48-9].

17. Brad Gray was upset because the Moundville police officers, who had arrested him outside of his home, went inside to get his pistol. [Doc. 50-2, p. 48].

18. Robertson recalled the encounter as being an "eventful situation," and recounted that Brad Gray had threatened to sue. [Doc. 50-2, p. 48, 81].

19. Robertson obtained the pistol from Moundville Police Officer Landry Donaldson and returned it to Brad Gray because he was concerned about the absence of a search warrant when the gun was taken. [Doc. 50-2, p. 52].

20. "If [police] want to get evidence, we get a search warrant. We don't walk in and get it. That's just not – we can't do that." [Doc. 50-2, p. 59].

21. Robertson was told that the pistol had only been confiscated for "safekeeping" purposes because the officers "didn't want nothing to happen to it." [Doc. 50-2, p. 54, 80].

22. The pistol was never booked in on an audit list of evidence at the police department. [Doc. 50-2, p. 58-9]

23. Defendant Robertson believes that he may have discussed returning the pistol to Brad Gray with Moundville's Assistant Chief of Police, but never discussed it with the City's mayor. [Doc. 50-2, p. 67].

24. Defendant Robertson has no personal knowledge of Brad Gray being violent or having a violent reputation. [Doc. 50-2, p. 88-9].

25. At the time Robertson returned the pistol to Brad Gray, in August of 2015, "[h]e could legally own a firearm." [Doc. 50-2, p. 83].

26. Brad came to the police department to get the pistol. [Doc. 50-2, p. 94].

27. The Plaintiff, Ms. Ray, testified that she is unaware of any of the policies or procedures of either the City of Moundville or the Moundville Police Department. [Doc. 50-1, p. 96].

28. The Plaintiff alleges that the pistol returned to Gray in August of 2015 was the same one used to kill Paige and Kaci Mitchell approximately 17 months later in January of 2017. [Doc. 25, ¶ 16].

## ARGUMENT AND CITATION TO AUTHORITY

I.  Introduction

The Plaintiffs' Revised First Amended Complaint (the "Complaint"), which is the operative pleading, essentially contains two claims on which it seeks relief: wrongful death, pursuant to Ala. Code §§ 6-5-391, 410, and "Liability Under 42 U.S.C. § 1983." [Doc. 25, p. 4-5]. The Complaint names Sylvia Ray, the personal representative of the Estates of Paige and Kaci Mitchell, as Plaintiff. It names the City of Moundville, the City's former chief of police, Ken Robertson, and the Estate of Bradley Elliot Gray as Defendants.

All claims found in the Complaint rest on the following erroneous allegation: "[s]ometime *after* September 8, 2015, *after Gray's conviction*, the City returned his pistol to him." [Doc. 25, ¶ 14 (emphasis added)]. Doing so, at least according to the Plaintiff, would have violated Ala. Code § 13A-11-76 and/or 18 U.S.C. § 922. [Doc. 25, ¶ 12]. Chief Robertson unambiguously testified, though, that the pistol was returned to Brad Gray *before* he pled guilty to the criminal charge against him. [Doc. 50-2, p. 47]. Not only that, but Robertson did so due to concerns that the gun had been "seized" in violation of the Fourth Amendment. [*See* Doc. 50-2, p. 52]. Thus, and for reasons to be explained more fully herein, the City of Moundville is due to have judgment granted in its favor as a matter of law regarding all claims asserted against it.

## II. The City of Moundville is Due to have Judgment Granted in Its Favor as to Counts I and II, the Wrongful Deaths of Paige and Kaci Mitchell

The Plaintiff's claims for the wrongful deaths of Paige Mitchell and Kaci Mitchell, found in Counts I and II of the Complaint, rest on the unsupported allegation that an officer or employee of the City of Moundville returned Brad Gray's pistol to him *after* he was convicted of violating Ala. Code § 13A-6-132, Domestic Violence – Harassment. As previously noted, this allegation is incorrect because, as Defendant Robertson testified, he returned the gun *before* Brad Gray pled guilty to the criminal charge.[1] Therefore, the Plaintiff is incapable of demonstrating the factual basis for any of her claims against the City and it should receive judgment in its favor as a matter of law.

Furthermore, any claimed act or omission of an officer or agent of the City of Moundville was not the proximate cause of the deaths of Paige and Kaci Mitchell; rather, the intentional, criminal actions of Brad Gray were. "Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury." *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976). The Alabama Supreme Court has consistently found, as a matter of law, that the intentional or criminal acts of a third party (such as Brad Gray here) are

---

[1] Even had Chief Robertson returned Brad Gray's pistol to him after Brad pled guilty to violating Ala. Code § 13A-6-132, for which there is no evidence, the crime to which he pled does not constitute a "domestic violence" offense for purposes of either Ala. Code § 13A-11-76 or 18 U.S.C. § 922. Additionally, given the relationship between Brad and Ms. Mitchell, it is not clear that he is someone to whom either Ala. Code § 13A-11-76 or 18 U.S.C. § 922 would be applicable.

an independent, intervening cause of injury, which prevents any act or omission of the defendant from being the proximate cause necessary to support the plaintiff's cause of action. *See, e.g., S.B. v. St. James Sch.*, 959 So. 2d 72, 97 (Ala. 2006)(concluding that the "intentional act of disseminating the photographs to others constitutes a sufficient intervening cause that supersedes [the defendant's] failure to delete the photographs as the proximate cause of the [plaintiff's] injuries"); *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1276 (Ala. 1993)(noting that "negligence actions … will generally not lie … [due to] a deliberate intervening act exonerating the defendant from legal responsibility"); *Mobile v. Largay*, 346 So. 2d 393, 395 (Ala. 1977); *Vines, supra*, 336 So. 2d at 1339 (affirming summary judgment and holding that the "negligent driving of the thief was the proximate cause of the injuries," not any claimed negligence of the defendant).

Finally, and also dispositive of the claims against it, the City is due to receive the immunity to which Defendant Ken Robertson is entitled. Defendant Robertson is entitled to the application of State-agent immunity, pursuant to *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), and/ot Peace Officer Immunity found in Ala. Code § 6-5-338 (stating that "[e]very peace officer … shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties"). The City of Moundville adopts herein the arguments asserted by Ken Robertson in his motion for summary

judgment and brief (contemporaneously filed herewith) that demonstrates his entitlement to immunity from suit. Because Defendant Robertson "is immune, then so is the City, which employed him." *Hollis v. City of Brighton,* 950 So. 2d 300, 306 (Ala. 2006); *see also Ex parte City of Montgomery*, 272 So. 3d 155, 169 (Ala. 2018).

### III. There is no Evidence Capable of Supporting a *Monell* Claim against the City of Moundville, Warranting a Judgment in the City's Favor

Count III of the Plaintiff's Complaint purports to assert liability against the City of Moundville pursuant to 42 U.S.C. § 1983. [Doc. 25, p. 5]. "Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Bowles v. Desantis*, 934 F.3d 1230, 1239 (11th Cir. 2019). In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that "local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations" arising from that government's policies or customs. 436 U.S. 658, 690-691 (1978). The Plaintiff's Complaint, however, identifies neither a constitutional right violated, nor the policy or custom of the City of Moundville supposedly leading to that violation.

The Complaint alleges that the "policy, custom, or practice of the City, and the conduct of those defendants pursuant to that policy, custom, or practice, deprived Paige Mitchell and Kaci Mitchell of their constitutional rights and resulted in their deaths." [¶ 31]. Nowhere does the Complaint identify the Plaintiff's right, and

8

nowhere does it identify a policy, custom or practice of the City. Furthermore, and as with the claims for wrongful death, the Count asserting claims pursuant to § 1983 erroneously presupposes that the pistol was returned to Brad Gray "at the conclusion of the criminal case." [¶ 30]. Because the Complaint does not identify either the City's policy or custom or the constitutional right supposedly violated as a result of the City's policy or custom, the City is due judgment in its favor as a matter of law.

> **A.** The Plaintiff's Claim(s) Pursuant to § 1983 Fail for Want of Identification of Any Constitutional Right Violated by the City

To bring a claim pursuant to 42 U.S.C. § 1983, a plaintiff must "prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). However, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). "In order to seek redress through § 1983 [], a plaintiff must assert the violation of a federal right, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)(emphasis original). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140. To do so, courts must "isolate the precise constitutional violation with which [the defendant] is charged." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Indeed, they "must

identify a constitutional predicate for the imposition of any affirmative duty on a State." *Youngberg v. Romeo*, 457 U.S. 307, 319 n. 25 (1982).

Here, the Plaintiff has identified no constitutional right that was supposedly violated by the City of Moundville. Again, "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker,* 443 U.S. at 146. The statute "does not provide a remedy for 'any and all injuries inflicted by persons acting under color of state law.' Absent the existence of an underlying constitutional right, no section 1983 claim will lie." *Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987)(quoting *Washington v. District of Columbia*, 802 F.2d 1478, 1480 (D.C. Cir. 1986)). Having failed to identify a constitutional or federal right that was infringed upon by the City of Moundville (or anyone else), the City is due to have judgment granted in its favor.

**B.** The Plaintiff's § 1983 Claim(s) Fail because She has not Identified a Policy or Custom Capable of Supporting a Claim for Municipal Liability

Moreover, and even had the Plaintiff identified a constitutional right that was supposedly violated, she has not shown that any such violation can be attributed to a policy or custom of the City of Moundville. "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible." *St. Louis v.*

*Praprotnik*, 485 U.S. 112, 123 (U.S. 1988). A municipality may not be liable under § 1983 based upon the doctrine of *respondeat superior*, but instead only when the municipality's official policy or unofficial custom causes a constitutional violation. *Monell, supra,* 436 U.S. at 694.

A "plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Commr's v. Brown*, 520 U.S. 397, 403 (1997). Since deciding *Monell*, the Supreme Court has held that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Thus, to assert municipal liability under § 1983, the Plaintiff must identify "either (1) an officially promulgated policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policy maker." *Grech*, 335 F.3d at 1329.

There is no official policy of the City of Moundville governing the return of confiscated firearms that were arguably seized in violation of the Fourth Amendment's warrant requirement. Furthermore, the Plaintiff candidly testified that she was unfamiliar with any policies and procedures of the City of Moundville or the Moundville Police Department. [Doc. 50-1, p. 96]. She cannot therefore rely on an officially promulgated policy of the City to support her theory of liability.

Neither can she rely on an unofficial custom to do so. The Plaintiff has provided no evidence of "repeated acts of a final policy maker" regarding the return of confiscated firearms, and therefore she cannot rely on an "unofficial custom" of the City to support a claimed violation of her constitutional or federal right (unidentified though it is). "Demonstrating a policy or custom requires 'show[ing] a persistent and wide-spread practice.'" *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007)(quoting *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). The City, then, is also due to receive judgment in its favor regarding the Plaintiff's § 1983 claims because she has provided no policy or custom of the City, as required by *Monell* and its progeny, resulting in a claimed deprivation.

### C. Assuming, *Arguendo*, that the Plaintiff had Asserted a Fourteenth Amendment Violation, the City is Still due Judgment in its Favor

While the Plaintiff has never identified a constitutional right on which she brings her claims, the undersigned counsel for the City can contemplate no other conceivable basis than perhaps the Fourteenth Amendment. That Amendment provides that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The U.S. Supreme Court has "interpreted this clause to provide two distinct guarantees: substantive due process and procedural due process." *DeKalb Stone, Inc. v. City of DeKalb, Ga.*, 106 F.3d 956, 959 (11th Cir. 1997). Neither is applicable based upon the facts asserted

by the Plaintiff, and the City is due judgment in its favor as a matter a law, assuming, of course, she was even asserting the Fourteenth Amendment in the first place.

The substantive component of the Due Process Clause "protects individuals from arbitrary conduct by government officials that 'shocks the conscience.'" *King v. Pridmore*, 961 F.3d 1135, 1143 (11th Cir. 2020)(internal citations omitted). "Even intentional wrongs seldom violate the Due Process Clause, and 'only the most egregious official conduct can be said to be "arbitrary in the constitutional sense."'" *Maddox v. Stephens*, 727 F.3d 1009, 1119 (11th Cir. 2013)(quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The bar for proving a Fourteenth Amendment violation is therefore quite high, and the facts of this case are exceptionally different from those that are conscience shocking. *See, e.g., Lewis*, 523 U.S. at 849 (holding that "conduct **intended to injure** in some way unjustifiable" arises to "the conscience-shocking level")(emphasis added). Moreover, though, the Supreme Court has explicitly held that the substantive component of the Due Process Clause "does not 'require the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005)(quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989)). The City is therefore due judgment in its favor regarding any potential substantive due process claim the Plaintiff may have alleged.

Likewise, the City is due judgment in its favor regarding any procedural due process claims the Plaintiff may have alleged. "In order to state a procedural due process claim, a Plaintiff must show that he was deprived of a constitutional right without due process of law." *Niziol v. Dist. Sch. Bd.*, 240 F. Supp. 2d 1194, 1210 (M.D. Fla. 2002). As already discussed, the Plaintiff has not stated a constitutional right of which she was supposedly deprived. Even if her claims were intended to have been brought pursuant to the Fourteenth Amendment, that Amendment provides a "limitation on the State's power to act, **not** [] a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195 (emphasis added). "It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.*

Because the Plaintiff can show no violation of an individual right provided by the Fourteenth Amendment, the City is due a judgment in its favor regarding her claims brought pursuant to 42 U.S.C. § 1983.

## CONCLUSION

WHEREFORE, the foregoing premises considered, the Defendant City of Moundville would respectfully ask this Court to GRANT is Motion for Summary Judgment, and to enter a judgment in favor of the City. The City adopts herein any

14

arguments and authority asserted by Defendant Ken Robertson in support of his Motion for Summary Judgment that would be equally applicable to the City.

                                                  s/ R. Warren Kinney
                                                  James W. Porter, II
                                                  Richard Warren Kinney
                                                  Southern District Code: KINNR5682
                                                  *Attorneys for City of Moundville*

OF COUNSEL:

**Porter, Porter & Hassinger, P.C.**
880 Montclair Road, Ste. 175
Birmingham, AL 35213
Phone: (205) 322-1744
jwporterii@pphlaw.net
wkinney@pphlaw.net

## *CERTIFICATE OF SERVICE*

      I hereby certify that a copy of the above and foregoing has been ***electronically filed*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon the following, on this the 25th day of November, 2020.

| | |
|---|---|
| John E. McCulley<br>601 Greensboro Ave., Ste. 200<br>Tuscaloosa, AL 35401<br>johnemcculley@gmail.com<br>*Attorney for Plaintiff* | Michael S. Burroughs<br>P.O. Box 1908<br>Tuscaloosa, AL 35403<br>mike@michaelburroughs.com<br>*Attorney for Plaintiff* |

Thomas O. Gaillard, III
Post Office Box 2767
Mobile, AL 36652
E-Mail: tog@helmsinglaw.com
*Attorney for Ken Robertson*

                                                    s/ R. Warren Kinney
                                                   OF COUNSEL